Good morning everyone. It's good to see you. We'll begin with our first case this morning which is USA Gymnastics v. Liberty Insurance. Mr. Schiller. Good morning members of the panel. My name is Ronald Schiller and I represent Liberty Insurance which I'll also be referring to as LIU or Liberty. The panel has our arguments. I would like to with the permission of the panel focus on three arguments today and address the other two arguments as the panel deems appropriate with questions or if time permits. The three arguments I intend to focus on are the conduct exclusion argument whether or not the investigations constitute a claim and therefore are covered and the year of claim or prior knowledge. They overlap argument and to be clear that means there are two other major categories of arguments here. The bodily injury exclusion argument and the EPL or employment practices liability sublimit of $250,000. I can cover them if the panel would like me to but given the time permitted I wanted to focus instead on the conduct exclusion the issue and the year of claim issue. Before you launch into the merits could you tell us when you began complying and making payments so complying with the court's order? In terms of first off your honor we have always been making certain payments and that is we've been making payments for the defense of the personal injury suits. When did you start making payments to comply with the order you're appealing here? Recently your honor the bankruptcy court entered an order fixing the amount due and we have and we have already made payments pursuant to that order. In other words there were further proceedings your honor. Fixing what? How recent was that? Oh in the last I want to say six weeks and before that your honor we did not yet have an order setting forth the amount because as the panel knows the bankruptcy court and judge young in the district court had not set forth an amount but had entered an order that we were required to make payments and set aside for a future proceeding an enforcement of that order to determine the amount of payments. That order which is currently subject to objections that were filed in the district court and USA Gymnastics has opposed it that order was only entered I want to say four weeks ago and and pursuant to that order your honor we've made subsequent payments. Besides that we have been paying part of EPIC which is a vendor's bills. There's a disagreement about whether we're required to pay four or five percent a share among all the insurers or more and we've also been paying defense of the Nassar personal injury suits but the recent order we have been making payments on your honor. Now if I could go to the conduct exclusion if nobody else has questions. Okay one thing to be clear about is I know the panel knows this but this is not a GL or USA Gymnastics is suing on RGL. This is different this is a DNO or directors and officers or executive professional liability policy and as a result this is a claims made policy that has a much narrower duty to indemnify and a defined duty to defend. Some of the exclusions and issues I'm going to be raising with the panel if this panel reverses then judgment should be entered de novo in favor of LIU. Other issues I'm going to raise would result in either a partial reversal or a remand so that not all issues would result in a total reversal. The conduct exclusion is one which if the court agrees with LIU results in a reversal. It's de novo review it reverses application of the of this particular DNO policy to the USA Gymnastics claim as a whole. The conduct exclusion again on a claims made policy provides this policy does not apply to any claim against any insured based upon arising from or in any way related to any deliberately dishonest malicious or fraudulent act or omission or any willful violation of law by any insured. Now that language first of all is the claim exclusion that starts with the prefatory language this policy does not apply to and what that language means is that the policy does not apply at all with respect to either defense or indemnity and there are other provisions in this policy not under section 4 claim exclusions but for example under section 6.2 which is a loss exclusion which distinguishes between a covered loss or indemnification and defense and says that under certain circumstances for example in 6.2 while a loss may not be covered by this policy defense would be not true with the claim exclusions the very broad exclusion this policy does not apply so it reaches defense and indemnity and it applies to any claim against any insured in any way relating to any deliberately dishonest malicious or fraudulent act or any willful violation of law by any insured. Now that language is different than any Indiana case cited by USA Gymnastics to the panel. No case involves the broad this policy does not apply to or any claim against any insured and in fact the word any insured is reinforced repeatedly in this language in a way or could I ask you you said that if we agree with you on this issue we should reverse entirely. Would it be possible to agree with you about in essence the first half of the claw of the exclusion but to say that the only final adjudications concern the the 10 young women where Dr. Nassar was actually against them. I would it be possible to parse the language and say that the adjudication which is required here does not bar as to any person for everything possible yes not supported by the language we respectfully submit your honor and the reason for that is that the acts that issue here are acts of Larry Nassar. Consider for example how such a clause might apply let's say to an insured business that has an employee who has four accidents traffic accidents driving company vehicles over the course of a year the employee is drunk in each one of them. Would all of those have to be treated as related as you see it for this purpose particularly if he's convicted of only one. Well your honor that's not I am I don't think all of them would have to be treated as related however your honor that's not our facts our undisputed facts are a that Larry Nassar was convicted of willful and intentional conduct. Secondly he had a sentencing hearing with some 200 people who testified. Third the convictions involved both Michigan state and non-Michigan state that is USAG athletes. Next he next USAG itself says these are related claims and interrelated wrongful acts. The only way it can connect all of the investigations which I'm going to get to to Larry Nassar's conduct is to say that these acts of depravity depravity these acts of sexual acts that were unlawful and for which he was convicted and sentenced to a couple hundred years in prison with a couple hundred people testifying against him they have said that these acts connect everything they have to say that because otherwise all of the investigations that they're seeking coverage against from USAG I'm sorry from LIU liberty and only liberty on unless they go to a subsequent BNO carrier because your honor rules against them the only way they can connect them is to say that these acts by Larry Nassar are related and are interrelated wrongful acts and to be clear before you go before you continue on I do have a question about this particular language which everyone is referring to as an intentional acts exclusion but the the language is particular to the context here which is a DNO policy um and an EPL and the EPL insurance context um and the the cases mostly cover intentional acts exclusions in CGL and so my question is is this language common um in um DNO insurance policies or is this unique to your company your client it is not uncommon in DNO policies meaning that DNO policies as a matter of practice frequently bar coverage in any way relating to deliberately dishonest malicious or fraudulent acts or willful violation of law and to be clear your honor it's not deliberately or fraudulent causes of action in other words for a financial fraudulent crime it's an act uh it's it's a willful violation of law is a type of violation of law or a cause of action but deliberately dishonest malicious or fraudulent act is more specific and that can be any type of act your honor it does not have to be a financial crime and there's nothing of course in this language that connects it to a financial crime that's I think your honor was was asking well right and in this context this is DNO insurance it would be a moral hazard to insure against this kind of conduct and it would violate the fortuity control that underlies all insurance and that's correct your honor and it would also violate uh even in the GL context whether it's an accident or an occurrence but here it's more specific than that your honor uh and with respect to the question that Judge Hamilton asked about uh provided however this exclusion shall only apply if it's finally adjudicated that such conduct in fact occurred uh that's that's an important provision which says that if it's a mere allegation it doesn't work uh to to to trigger uh this but here we we have the unusual situation of it's not a mere allegation we had Larry Nassar convicted of a series of criminal offenses in two counties in Michigan some of those offenses dealt with USA Gymnastics athletes under 15 years old others under 16 years old these were not MSU students if they're 13 or 14 or 15 and there's no question that these are the same acts that USA Gymnastics is saying is the connection for all the and that includes the USOC investigations the decertification and the FBI investigation point of the provision on that point of the provision as we look at the various groupings of allegations you've got the 10 that he pleaded guilty to you got the additional 140 or 150 or you say 200 of individuals who spoke at the sentencing then there's a group of another 200 that are outside of that is your argument that those extra 200 are part of the final adjudication because they were Nassar related or is your argument that because they were all under these various investigations that they meet that provision it's it's that his acts as to the 10 for which he was convicted uh were also ended up including the other 140 or 200 who testified against him and what about that next group that of 150 or 200 because I understood it to be a total of 400 or 450 yeah yeah all of them were complaining about the same acts both the physical acts of of of abusing and molesting and digitally digitally women and girls as well as the cover-up and and and and that the acts that he took to groom and prey on and perpetuate this this this this this crime and he was convicted of all of that and USAG has said that those are the acts that connect everything here and to be clear this is a five million dollar directors and officers liability policy uh if we're right and the panel agrees it's a 250,000 dollar policy with an EPL sublimit but I won't spend time on that right now uh but uh it has defense on top of that and what USAG has said because uh the panel or the seventh circuit asked us what defense costs are going on out there when we original originally invoke jurisdiction because aren't the Nassar personal injury suits stayed and for the most part that's true except the investigations are millions and millions of dollars of of claimed costs and they connect them to us because those investigations didn't start with one exception I'll get to until 2018 and our policy ended uh May 16th 2017 the only way they connect all those investigations and the millions of dollars of claimed defense costs to us is through those same acts because those investigations they admit they claim do not themselves involve sexual misconduct acts in other words USAG if it's the subject of the investigation or the USOC or the FBI or the but USAG is connecting everything to the sexual crimes of of Larry Nassar your honor and then the other I'm sorry you may continue okay the other issue that I just wanted to touch on is none of the cases that USAG cites involve this broad use of any uh and uh under uh and and USAG goes a long way to try to say that any shouldn't be simply distinguished from the it should also be distinguished from all the court doesn't need to go there a plain language fair and only reasonable reading is that any insured means any insured not that insured their reading essentially wants to read out the any to say that uh the exclusion only applies with respect to uh Larry Nassar even though it says that in short and to be sure could could you help me um because time is short I'd like to move to the anti-imputation clause yes yes exclusion and I I'm struggling to understand it um what what is the purpose of that okay sure the anti-imputation clause says for purposes of determining the applicability of the section we've been talking about as well as others the wrongful act of any insured person cannot shall not be imputed to any other insured person and to be clear that's distinguishing uh uh who an person from an insured organization your honor and what that means is that if not Dr. Nassar who's an insured person and to be clear an insured person must be a natural person not a corporation so if Dr. Nassar is convicted uh but Ms. Smith is another employee of USAG uh she is not precluded from having this insurance uh just because another insured person was however and this is our point your honor this doesn't say any other insured which would include an insured organization it doesn't say uh any other insured person or insured organization which by the way section uh other sections do say of this policy this policy says that the only person who gets treated as if they're innocent and therefore gets coverage regardless of whether another insured person doesn't is another insured person and somehow the district court read out insured person to mean insured organization there is no law in indiana or elsewhere that permits a reading of insured person to mean insured organization and the argument instead that somehow we should have said explicitly in this situation that insured person means and not insured organization uh is is not supported by any law if i could spend two minutes members of the panel on the investigation uh issue and if i maybe save one minute for year of claim and then i'll save some time for rebuttal with the panel's permission uh investigations i mentioned the investigations in here too we believe that uh the panel has the power and should reverse entirely but in the event that the panel doesn't feel the record is sufficient to do so then we should have an opportunity to develop the facts and to be clear there were two ways the liu tried to develop the facts here one was by pointing to the very same ropes and gray report that usa gymnastics relied on and uh and when we did so that the bankruptcy court called the facts that were cited quote chatter chatter is a word i'm not familiar with under the federal rules but the court used that to deny us an opportunity to either create a fact issue or to take discovery the other issue is the rule 56d affidavit i just want to point out to the court that the fbi uh in investigation is no more or less a claim than the uh usoc investigation with ropes and gray a private law firm doing the work both of them were started by reach outs actually usac with just a letter from ropes and gray and usag insists that's a formal investigation which is a requirement under the policy the fbi investigation was actually started uh when various uh uh famous athletes complained uh of being physically uh molested by dr nasser the other issue i want to bring up just before i uh quit because i don't want to use up all my time unless the panel has questions uh is the timing issue here because it was another issue that we thought we were at least entitled to have discovery on and pointed to the ropes and gray report among other things uh the there's no question because usag itself cites to the ropes and gray report to prove this that the investigation by the fbi began in july and august 2015 remember our policy incepts may 16 2016 and there were interviews that were conducted in september 2015 again in the same that if it establishes that the actual fbi investigation was a formal claim and began with interviews of important uh and well-known athletes and that resulted in an investigation by the fbi then it precedes our policy period and does not trigger our policy with the panel's permission i'd like to reserve the remaining three minutes that's fine thank you mr please thank you i may please the court on the first thing i want to say about this case is that it's about the duty to defend and it is measured to defend measured under indiana law indiana law and the duty to defend is quite clear and it is expansive and says that there is a duty to defend if there's any possibility of coverage here and as i will think i will be able to show you we showed you in our briefs there certainly is more than a possibility of coverage under for all of these various claims and investigations as well as what they had been paying on already in terms of the four to five percent he mentioned about the bodily injury claims the crucial part about this is when you look at for example an exclusion under the seymour case in indiana it's just simply having an exclusion that might apply isn't enough to block the duty to defend by the way judge hamilton to answer your question the first check we got was on and when you so if if you um have a duty to defend as they do then it's unquestionably a duty to defend under the policy then you have that duty it continues until it's shown there is no possibility of coverage and they haven't done that and so the support for the court and in 100 pages of briefing they don't even mention seymour or discuss the standard of a duty to defend or how that works um their argument seems to be now and the primary argument in the brief was that they had no opportunity for discovery that's just about and now they most uh vociferously complain about the fbi investigation in 2018 the fbi work in 2015 yep they've known about that since the very beginning of this claim if you look at the letters in volumes two and three of the particularly volume three of the appendix you'll see that those letters articulate um there's a reservation of rights letters from them articulate this very issue as early as july of 2016 they have had all the time most importantly since the time when we filed our motion for summary judgment in the adversary proceeding in front of judge moberly that was in on march 1st of 2019 they had six and a half months to conduct whatever discovery they wanted to uh with respect to that to file a 56d motion if they needed more time if they needed more information but they didn't do that and they didn't file that until they didn't file 56d motion until after we pointed out the absence of that and in support of objections after judge moberly had heard and ruled on the on the motion for summary judgment and that's not good enough that's a waiver that's a waiver and and furthermore um you know the the the question here is not a simple one between ordinary advocates they're an insurance company they've sold us a policy policy promising to defend us they have a duty to investigate that claim as soon as they get it for whether or not they have a duty to defend and here they are four years later from 2016 when we make our notice we're now in 2020 four years later claiming that they need more discovery and that it's inadequate to to proceed without it that somehow the judgment about a potential for coverage and therefore a duty to defend is somehow inadequate on that basis that just won't sell in your own cases um judge judge hamilton even the smith case where he found there was a basis to to go back on to get some relief there the party was diligently pursuing discovery not not uh letting it go for four years in other cases woods um in those cases provide that the um the result is a waiver and a forfeiture and and that that's only their own fault and certainly it is the case here we they haven't identified a single document we haven't given them a single question we haven't they simply sat on this and have not done their their due diligence to to be able to mount a defense that they need more discovery and that somehow the judge's uh determination was premature or unfair to them with respect to the the this new fbi investigation i want to point something out that's very important and that is it doesn't really change anything the the policy provision that were the the defines a claim is one thing then in that definition of 23.3 it continues on to say and this is the critical point because it when it's first deemed deemed first made is what policy it triggers it says a claim will be deemed first made on the date and ensured receives a written demand complaint indictment notice of charges or order of formal investigation so to be first made and the trigger of that policy that's when the policy period is triggered they have to show a written document one of the five documents listed which are listed again are which are written demand complaint indictment notice of charges or order and formal investigation so the principal argument they now present actually doesn't make a difference as to whether because they they haven't been able to show any of those documents written demand written complaint written indictment written notice of charges or written order of formal investigation so there hasn't been a claim first made and in fact what the judge found is true the claim was first made in may of 2016 when the first written demand was received and that's all anybody fbi gropes and gray um well i can't say liu because i'm really conducting a discovery but that's all so and that's mr pluth um that that um uh determination of the bankruptcy court was made on the basis of an affidavit from um was it the cfo of us a that's right that's right it was not based on any evidence of the underlying claim no it was based in the independence you'll see the notice of the other of the other claims and you'll see that by us of the earlier transmission of information to the fbi they knew all that and to if you look at 644 645 and append a for 644 you'll see that they have that they have that information already right no i i this is not related to the waiver the waiver question this is and the procedural question that's lurking underneath the when the first claim was made i'm looking for the substance of when the first claim was made and what the record tells us when the first claim was made and all we have is the affidavit of the cfo we don't have an actual claim document in the record yes you do you have the claim itself the july the may 25th 2016 claim you have the written documents in there in the record i believe it and and you also have the ropes and gray report which describes the same thing i mean everybody that's looked at this has come around to the same conclusion and they don't have anything different and they haven't even tried they haven't even looked beyond that or asked us for and there isn't there isn't anymore and and if and that's where we stand now i will say to you that even if that were still an issue in some doubt and it had some real it had some relevance because you see because it's not a claim first didn't have an earlier claim first made document it has no real relevance here but even if it did that wouldn't be a basis for not defending the two you defend and it doesn't matter how you label the policy by the way whether it's dno the policy makes the promises it makes in plain english and those promises are solemn ones and they are to be obeyed and they've been paid for and so they need to they need to provide for that i'd like to turn to the conduct exclusion because that's an important exclusion but here again the first point to make is that the mere presence of an exclusion even one that might work doesn't defeat the duty to defend and that's what you have before you you don't have indemnity damages before you you have a duty to defend before you and you have what's what's the defense duty but now let's look at this exclusion for a moment the first thing you have to say is that it's got to be crystal clear under indiana law under kiger and flex star and the other cases we decided you can't just have an exclusion the exclusion has to be precise and specific and clear and this isn't for many reasons but you look at the any the double nes there and you can easily confine as i did when i first read it to talking about the person who actually committed the act any person that's not who commits this kind of act is not going to get coverage mr pluse does the you does the use of the double nes or the many nes and the double any insured take this uh case away from frankenmuth and take it away from um holiday um holiday hospitality yeah no your honor it doesn't i don't think because it is there's no they never make an argument how the double nes do anything particularly this adds more confusion in my mind you should they should if anything the use of the two nes should be consistent between one any to two any that's not the only indication we have here of the limitation of this policy several which you've pointed out already and it's a limitation it's exclusion and they limit it by by the adjudication requirement it says final adjudication finally adjudicated and that is adjudication to a policyholder of ordinary intelligence which is what the standard is in indiana means a certain thing it means an adjudication a solemn finding by a judge not a guilty plea not testimony at a sentencing hearing it means what it says an adjudication they haven't shown you that any of those on the record that those any of those 10 relate to usag specifically they just haven't shown that that was ever mr plues that prefatory language in 4.9 based upon arising from or in any way related to does that broaden it from the time no i yeah yeah it's it's um based upon arising from related to um it i mean it doesn't it doesn't you can't you can't say it related to in the sense of if you look at the the exclusion as a whole you can't say that it's meant to pick up absolutely any connection whatsoever or anything because it contains all those other provisions contains the final adjudication requirement and the and the um the non-imputation clause is another indication and let me say another thing about this very point and that is that liu for six in six letters over two years in volume three of the record i give you examples a578 and a644645 took the position that's exactly ours that it would only bar intentional conduct by usag not like not have be innocent conduct if you will merely neglectful conduct by usag be barred by that provision that's a position they took their lawyers for the first six letters they wrote on this i'd submit that's pretty powerful evidence that this exclusion is not clearly the way they say it is um in fact i don't see how you get it they make those they make the statements um and all that happens to change their mind is that we do them so well on its face mr pluse the anti-imputation clause does not refer to the organizational insured uh it doesn't and so it doesn't really say one way or the other does it so then if you're a policy holder what you might do i'm sorry it so it's just not in play here now it is in this sense or i want to make one point about that if i might if you look at 6.2 which is later on the policy you'll see there that when they meant to impute impute liability to the insured organization they said that they used the word impute insured organization in the in that clause it's a clause about imputing um uh misstatements in an application and you'll see that they use the word insured organization in that when they're talking about the imputation if you're the policy holder of average intelligence looking down looking at this policy and seeing seeing it looking at that clause in conjunction with the failure to use insured organization in that clause and then looking at the not just the anti-imputation clause but the final adjudication clause and then the word any you begin the signals are that that they're trying to protect the innocent sure they're actually all protecting the innocent person right the innocent the innocent insured person and remember our organization is only made up of i mean it's so if they're going to specifically single out the insured organization it needed to be set forth as they do in that paragraph just a little bit farther down down the policy and there's a case in indiana flex star supreme court case that makes that very point when an insurance company has language available doesn't use precise language that it's stuck with the ambiguity and the ambiguity here is evidenced by a bunch of other things i wanted to touch on quickly besides their own their own recitation that it would be interpreted the way that we said it would be they concede the possibility of coverage really by by paying all those nasser bodily injury claims because if this conduct exclusion actually worked they shouldn't have been paying the bodily injury claims either right it's the kind of conduct exclusion applies to them too but they didn't they paid them because there's a possibility of coverage there there's a propeller courts in the 10th circuit with us um and that dispute that very dispute under the dana and summit cases in indiana is important evidence of the ambiguity of the provision that judges being are presumed to be reasonable people and and therefore and therefore um you know when they disagree about what the scope of a of an exclusion or a provision that's sound of ambiguity um in addition the indiana case law has touched on this kind of a clause which we talked a little bit about earlier frank and muth's holiday hospitality um these the language the best thing i can say about that is that the most compelling thing i think is that when you lay those provisions by each other the provisions in holiday hospitality the provision frank and muth and in our policy as the court did below you find greater similarity much greater similarity in the language between our policy and frank and muth than you do with either one with holiday hospitality and that's because in the house but on the other reasons in holiday hospitality the policy made it very clear that they were they they were they were reaching the torts of negligence retention supervision in fact they expressly barred them so it's easy to make the construction consistent whereas in our case as just as justice is in the frank and muth case pointed out and by the way frank and muth i've looked at the briefs um in holiday hospitality frank and muth was just never mentioned the the lawyers on each side represent insurance companies they weren't fighting about that issue they were fighting about a care custody or control issue that's what 90 of the opinion is about and they never even mentioned cranking within 250 pages now mcgowan case we say to you that certified this question to dns supreme court but then was then was um so then was settled before it got resolved is another indication of the ambiguity of these and the sort of conflict and decisional law that we have here was mcgowan a dno policy or cgl policy um i think yeah i think it's gl policy on it right i i think we have to pay attention to context because um insurance policies are written um in a contextualized way and and frankly i don't think either of these cases holiday hospitality or frank and muth are very helpful here because they're a completely different kind of policy this is dno insurance and i think we have to we have to take into account the context for which this is being written when deciding what the scope of coverage is um that that's very sound principle of insurance policy interpretation and i don't think the indiana courts disagree with that principle so unless there's some dno law in india on a clean slate here and i didn't see in the briefs um much reference to dno case law in indiana so we have to step back and take a little broader view it seems to me and look to um principles of dno insurance law that apply elsewhere and maybe you can help with that this language um mr schiller tells us in response to my question is is common to dno insurance um and so what does it mean in that context well your honor first of all in indiana i'm aware of no case that says that says dno words in a dno policy are to be treated differently than words in a in a cgl policy that that's not necessary we always consider the context of the contract that's just the sound principle of insurance contract interpretation we don't need a cgl policies are contextual health insurance policies are contextual that's just you know i'm asking in the dno context how have other courts in other jurisdictions interpreted this kind of very broad language um i i don't i don't know of any court that has said a dno case that has said uh because of the dno policy we're not covering this kind of claim um humor me okay let's assume that we have to interpret this in context and can you answer my question is there case law from other jurisdictions interpreting a dno policy that uses similar sorts of um of um words and phrases in um writing an exclusion for i'm not aware of a case that does that specifically in dno context what do the treatises say um the treatises i don't think just addressed that that i'm aware of and nobody cited any treatise to you in this case that said that dno policies are treated differently in that fashion and i think that your honor well some of the courts have recognized the claims made nature of dno policies as opposed to cgl policies that doesn't that doesn't mean we don't look at the language or interpret the language somewhat differently um and i and i submit that for all the reasons that you know including the courts that have wrestled with these with a language and the type of what they're all talking about the same type of content conduct and this policy wasn't written it could have been written to exclude all coverage for for anything having to do with a whole bunch of things but if there are no words aren't there we can't we can't simply draw we can't simply draw them from a context that doesn't exist well to your point claims made insurance functions very differently from occurrence-based insurance oh i'm sure both forms of liability insurance but they operate and function very differently and insured contract differently for that different kind of coverage right oh i understand i understand that but you we've i think we fit very easily with the claims first made and all the other provisions of this policy this policy is somewhat different than other dno policies in the very area of claims what it defines the claim and how it defines claim which is the which is another issue on appeal here it our definition has a much broader um and much less limited uh content than other dno policies that are in there that's an area where there's been more more litigation and more uh but for example the mussel farm and national um national stock exchange cases the national stock exchange you need they needed for a claim to have a formal investigation it was a it was a um it was strictly limited um to certain to investigations uh initiated by certain documents the claim here in contrast does not require that it doesn't require it the initiation by a written document that says it will end rules and the duty to defend is to defend any claim and the claim here um includes the commencement of a formal regulatory proceeding or investigation including blah blah blah um and that's you know it it's any formal investigation it doesn't require a specific document those other policies for example mussel farm didn't cover investigations it only covered proceedings and when it covered proceeding when it covered invest the only thing only kind of investigated investigation covered was that pursuant to a wells notice a particular kind of notice an sec investigation that's not the case here this is these these these terms are brought and when you look at those terms investigation and and formal and you're trying to decide does it cover what happened here um you know indiana law provides the analogy i think in the dana and summit cases which they don't address that are cases where they looked at the word suit which is similarly undefined and said what would the policyholder of ordinary intelligence think about that and how would it resolve that and it looked at it just as a policyholder would look here where they have the the duty to defend a claim which is broadly defined policy would look at that and say i have i have defense coverage i am entitled to be defended because formal investigation doesn't waste the way it's used here and the way it is as an undefined term considered under indiana law you look at it from from that standpoint how would the policyholder interpret that they'd look at that and say the investigations of the sort we have here are certainly the kinds of investigations that that this policy has in mind it's this is a gap mr clues okay i don't know i know everybody has a lot to say here and i don't want to interrupt another line of questioning if you if that's not done but there are two things i'd like to make sure that you address before you wrap up one is the issue of the third party epl limits um in particular because given the objective history not the subjective intent about what we meant that liberty is offered but objective history of the party's relationship and negotiations um i have real trouble with the uh with the notion that um that parole evidence was not allowed to explain what was meant by that coverage that was in that was out and that came back in with a limit second issue i'd like you address is mr schiller's point in suggesting that usag is inconsistent in the way that it treats the issue of relatedness among the different claims thank you first on the ep on the limits side of things and how that how that works remember that there's a letter october of 2018 where they confirmed that they deleted that coverage from the policy so they there's no question it deleted the coverage from the policy and that the limit that hung on there was simply an artifact what they want to do i think i actually can't it's not entirely certain they want to replace they want to bring back into the policy some unspecified language of terms and that's the problem how do you do that i mean they deleted it deliberately intentionally and yet now they want it they like the limit because that from the perspective of today it looks better for them but there's no there's no content to bring in and this lily case makes it very clear that parties prior course of dealing can't be used to try to explain an ambiguity or a lack of content in a in a insurance policy and and dana doesn't change that dana was a different dana by the way was written by justice foam who uh as you may know also was the lead lawyer for lily in the lily case so he knows there's a relationship between that and it and and what he what he wrote what he had in dana was a factual dispute about how a policy premium was actually set and that's what they had had to deal with now second point relatedness relatedness right i don't think we're in we're inconsistent i mean we're trying to satisfy to find which which policy period the claims fit into um and then the relatedness of the claims for purposes of a i think what you must be asking for is for purposes of the final adjudication provision in the conduct exclusion more generally kind of exclusion generally okay is relatedness there it's a specific it's got prior requires prior adjudication of such conduct or final adjudication of such conduct and it's you know i'm not sure the one the purpose of the relatedness provision that you've been talking about earlier is to figure out which which claims get sorted between which policies and that's not what the purpose of the conduct exclusion is um and it so it needs to it needs to be a kind of relate it needs to be the kind of relatedness that is is the 10 i mean those are the 10 they have to show the relation between between that and the other insurer in this case usha thank you thank you all right thank you very much um mr schiller get some time oh you're still muted mr schiller i apologize thank you uh on the last question this is what all state versus dana which dana 2 it's the 2001 indiana supreme court decision said 16 years after eli lily evidence of industry practice is admissible to construe terms of art or ambiguous agreements on the other issues uh i investigation what we heard is that using the last terms uh of the uh uh language on on the commencement of an investigation that it has to be in order of formal investigation yet on footnote five of usag's brief they said it didn't have to be in order of formal investigation and although uh usag just argued that it had to be in order of formal investigation later you heard that it doesn't have to be in order of formal investigation our point in my argument your honors uh is that you had uh two u.s olympic committee investigations one was a decertification proceeding and the other was their massive investigation through the private law firm ropes and gray these were not started with subpoenas orders of investigations uh or any other compulsory process these were of dollars for that usoc investigation which didn't occur until 2018 nearly two years after our policy the only way they can is by saying that their formal investigations and relate back to larry nasser's conduct at the same time the fbi investigation where the ceo of usag in the summer of 2015 reached out to the fbi because he had complaints from usag gymnastics uh famous athletes that they had been abused and he set up uh interviews including an interview in september that the fbi according again to that same ropes and gray report that usag relies on and put into evidence said that they had used it to commence a formal investigation so how how can you have one they're in the horns of a dilemma one is a formal investigation actually two usoc ones are but the fbi one is not our point your honor is it wasn't four years or six years we had reserved rights we agreed to defend because you are permitted under the law of indiana to defend while reserving rights you are permitted to reserve generally you do not waive when you reserve generally there's no estoppel or waiver argument under indiana law that is asserted here or works we defended so that we wouldn't be accused of having given up our rights to assert these very defenses there are fact issues here they were asserted uh in opposing their motion for summary judgment as to the date of claim and other issues we weren't given a chance to do anything about them and then the 56d affidavit on our objections the 56d affidavit on our objections uh preserved again the issues and in no case cited for waiver or estoppel deals with a 56d affidavit and the bankruptcy court jurisdiction and authority and provides that the bankruptcy court can deny that thank you your honor is it your theory mr schiller that in an adversary proceeding in the bankruptcy court a party is entitled to basically fully litigate the the summary judgment motion and then pull out a 56d motion for the first time in a do-over in the district court uh cannot raise new issues your honor but can raise factual issues well yeah evidentiary your theory is that summary judgment in the bankruptcy court uh can you can you're entitled to an entire do-over in the uh in the district court that you can that you are entitled to present additional evidence your honor under 93 uh under 9033 yes your honor title entitled or that the court may entertain under the first line of the statute that we that that that the word is but more important your honor even though because even though the court may bristle uh a district court judge at shall requiring him or her to consider additional evidence no court has denied a 56d affidavit under these circumstances this is not a court granted such a motion in a reported opinion uh i don't think there are any opinions dealing with this what we contended your honor in our briefing as your honor knows is that it was an abuse of discretion to not even consider it the court struck it on usag's motion that they shouldn't even allow us leave uh to present a 56d affidavit there is no court that's ever done that we couldn't find one that even considered it your honor and the denial of discretion at all is an abuse of discretion regardless of of the and some additional evidence come in and in addition as your honor into it uh the ropes and gray report and other things that were pointed to that usag itself put into evidence and used to establish things like the white uh subpoena matter uh and when it was presented uh and and in answer uh to the chief just judge's question uh they uh there is no evidence that the cfo went back and actually canvassed what prior claims they have all we have is the cfo saying this is the first one we rate thank you all right thank you very much thank you the case is taken under advisement and our thanks